**SETTLEMENT AGREEMENT AND INCORPORATED**
**FULL AND FINAL RELEASE**

This Settlement Agreement and Incorporated Full and Final Release (hereinafter referred to as "Agreement") is entered into by and between BROWN DISTRIBUTING COMPANY OF WEST PALM BEACH, (hereinafter referred to as "COMPANY"), DAVID BROWN, individually (hereinafter referred to as "BROWN") and CARLOS A. PONCE (hereinafter referred to as "EMPLOYEE").

KNOW ALL MEN BY THESE PRESENTS:

THAT for and in consideration of the total gross Settlement Amount of Five Thousand Five Hundred Dollars ($5,500.00), inclusive of attorneys' fees and costs, payable in accordance with Paragraph 11 of this Agreement, and other valuable consideration, the sufficiency of which is acknowledged:

1.     EMPLOYEE hereby unconditionally and irrevocably remises, releases, acquits, satisfies and forever discharges the COMPANY and BROWN (including its current or former: employees; insurers; agents; attorneys; affiliates; directors; successors; assigns; or representatives; in both their official and individual capacities) of, from and against any and all liability to EMPLOYEE upon claims, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, demands, and obligations of any nature whatsoever, whether known or unknown, in law or in equity, which EMPLOYEE ever had, now has, or which any of his personal representatives, successors, heirs or assigns hereafter can, shall or may have, allegedly arising during, after, or arising out of his employment at the COMPANY or BROWN, separation from employment, including, but not limited to, those

raised in Case No. 12-80760-CIV-MARRA filed with the Southern District of Florida, or any other act, event, failure to act or things which have occurred or were created at any time before or upon the date on which this Agreement is signed and becomes effective.

2. Without limiting the generality of Paragraph 1, this release covers, but is not limited to, any and all claims allegedly based upon public policy, common law, torts (such as, for example, negligence, negligent or intentional infliction of emotional distress, fraud, defamation, wrongful discharge, false imprisonment, assault, battery invasion of privacy); express and implied contracts (except this Agreement); federal, state or local statutes, ordinances or other laws, including those which regulate employment practices (such as, for example, the Age Discrimination in Employment Act, Family Medical Leave Act, Federal Civil Rights Acts (including but not limited to 42 U.S.C. Sections 1981 – 1988, 2000 et seq.); the Americans with Disabilities Act, the National Labor Relations Act; the Older Worker Benefit Protection Act, The Florida Civil Rights Act; any state or federal Whistle blower's Act; Public Employee Relations Act; Title VII of the Civil Rights Act; the Rehabilitation Act; the Equal Pay Act; the Worker Adjustment and Retraining Notification Act; the Public Health Services Act; the Fair Credit Reporting Act; the Occupational Safety and Health Act; the Consolidated Omnibus Budget Reconciliation Act; the Fair Labor Standards Act; the Health Insurance Portability and Accountability Act; any claims under Fla. Stat. 448.08 for unpaid wages and waivable rights under the Florida Constitution; and any and all amendments to such acts); any federal or state constitutional or statutory claims; unpaid wages, overtime or liquidated damages under any federal, state or local law; any right or entitlement to any individual relief including damages, attorneys fees, and costs which may be available through local, state, or federal regulatory agencies such as the EEOC; expenses, costs, fees, and/or attorneys' fees, incurred or claimed in

connection with any alleged claims; all issues involving the negotiation and execution of this Agreement; and every other source of legal rights and obligations which may validly be waived or released, except rights created or preserved expressly in this Agreement.

3. Further, EMPLOYEE waives any claim, right or interest in reinstatement or further employment with the COMPANY or BROWN. EMPLOYEE acknowledges that the waiver and release provisions of this Agreement also bars any claim or demand for costs, fees or other expenses including, but not limited to attorney's fees incurred or claimed in connection with any claims he may have against the COMPANY or BROWN. EMPLOYEE further acknowledges and agrees that the listing of claims waived in this Agreement is intended to be illustrative rather than exhaustive. Accordingly, EMPLOYEE acknowledges and agrees that this Agreement constitutes a full and final bar to any and all claims of any type that he had or presently has against the COMPANY or BROWN as of the date of the signing of this agreement.

4. EMPLOYEE makes the following representations and agreements to COMPANY or BROWN, each of which is a material term of this Agreement:

   a. That the payments and other benefits which the COMPANY or BROWN have agreed to provide, as stated in this Agreement, are payments and benefits to which he would not be entitled if it were not for this Agreement.

   b. That, as of the date of this Agreement, he has not suffered any occupational disease or disability, or any on-the-job related accident or injury of the type that might have entitled him to file a claim under Florida's Workers' Compensation Laws included in Chapter 440, Florida Statutes. The parties acknowledge that EMPLOYEE has resolved all pending claims in Case Number 284-0128974JB regarding workplace injuries and accidents.

   c. That he was provided and received all of the paid and unpaid leaves of absence to which he was entitled.

   d. That EMPLOYEE has been properly compensated for all hours worked

     during his employment with COMPANY and BROWN and has received all wages and salaries due in accordance with federal and state wage and hour laws.

  e. That he has read and understands each and every provision of this Agreement and any waiver pursuant to this Agreement is knowing and voluntary.

  f. That he has been advised by the COMPANY and BROWN that he should consult an attorney of his own choosing before signing this Agreement and he has, in fact, consulted with Jaffe Glenn Law Group.

  g. That he has not filed any complaints or initiated any other legal proceedings against the COMPANY and BROWN other than Case No. 12-80760-CIV-MARRA, Southern District of Florida, before the date of signing this Agreement.

  i. That he has not assigned, transferred or purported to assign or transfer any claims released in this Agreement and General Release to any person, association or entity.

  j. That he assumes the risk for any mistake of fact now known or unknown and that he understands the significance of this Agreement and General Release.

  k. That he has the mental capacity to enter into this Agreement and General Release.

5. It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the COMPANY or BROWN, and that the COMPANY and BROWN deny liability therefore and intend merely to avoid further litigation and buy their peace.

6. EMPLOYEE and his attorney, if any, are not aware of any liens and/or pending legal claims applicable to the Settlement Amount. EMPLOYEE agrees to defend, indemnify and hold harmless COMPANY and BROWN, its agents, insurers, attorneys, or representatives, against any lien, claim or action asserted against the Settlement Amount. EMPLOYEE also agrees that he will be solely responsible to satisfy any liens or pending legal claims asserted

against the EMPLOYEE, BROWN or COMPANY, its agents, insurers, attorneys, or representatives, as against the Settlement Amount.

7. It is further understood that in the event that the Internal Revenue Service should make a determination that these settlement proceeds are taxable in a manner different from that set forth in Paragraph 11, EMPLOYEE shall be fully responsible for the payment of any taxes, including but not limited to, income tax, social security payments or other such payments or taxes related to the payment received by him and neither the COMPANY nor BROWN shall have any responsibility for the payment thereof.

8. The terms of this Settlement Agreement and Incorporated Full and Final Release are contractual and not a mere recital and no other contract, promise or inducement has been made to EMPLOYEE other than as set forth herein.

9. Wherever used herein the terms "COMPANY", "BROWN", or "EMPLOYEE" shall include singular and plural, heirs, legal representatives, and assignees of individuals, and the successors and assigns of corporations wherever the context so admits or requires.

10. EMPLOYEE states and acknowledges that he has entered into this Agreement knowingly, voluntarily and of his own free will and he fully understands and agrees with all of the terms.

11. The COMPANY and BROWN shall cause to be paid the gross Settlement Amount of $5,500.00, inclusive of attorney's fees and costs as follows:

    a. The gross amount of $750.00, representing wages, less applicable withholding/taxes, payable to EMPLOYEE and reported on a W-2 Form;

    b. The gross amount of $750.00, representing liquidated damages payable to EMPLOYEE and reported on a 1099-MISC Form;

    c. The gross amount of $4,000.00, representing attorneys' fees and costs payable to Jaffe Glenn Law Group Trust Account.

all of the foregoing are payable within fifteen (15) business days of the Court entering an Order of Dismissal with Prejudice regarding Case Number 12-80760-CIV-MARRA and which also occurs after the expiration of the period during which Employee may rescind this Agreement. The checks shall be delivered to Jaffe Glenn Law Group.

  Within 3 business days of receipt of a fully executed copy of this Settlement Agreement and Incorporated Full and Final Release by all parties, EMPLOYEE shall cause to be filed a Joint Stipulation for Dismissal with Prejudice in this matter.

  12. Venue of any litigation between the parties shall be in Palm Beach County, Florida exclusively and this Settlement Agreement and Incorporated Full and Final Release shall be governed by the laws of the State of Florida.

  13. In the event of litigation between the parties hereto for actions arising under this Agreement or related to enforcement of same, including the seeking of equitable remedies such as injunctions, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, court costs and all expenses (including taxes) even if not taxable as court awarded costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.  However, this Paragraph 13 does not apply to any claims made under the ADEA.

  14. It is understood and agreed that, should any provisions of this Agreement or any part thereof, be rendered or declared invalid by any decree of court of competent jurisdiction, all other provisions of the Agreement shall remain in full force and effect.

15. This Agreement embodies the whole understanding of the parties. There are no promises, terms, conditions, or obligations other than those contained herein, and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written, between the parties hereto.

16. This Agreement shall not be construed against the Party who drafted the same.

17. EMPLOYEE acknowledges that he has read, understands and has fully considered this Agreement and is desirous of entering into same. EMPLOYEE acknowledges that he has had an adequate and reasonable period of time (at least twenty-one (21) days) to decide whether or not to sign this Agreement. Accordingly, failure to sign and deliver the Agreement to Law Offices of Glen J. Torcivia & Associates, P.A., on or before 5:00 p.m. on December 6, 2012, shall be deemed a rejection of the Agreement and he shall not be entitled to the benefits outlined herein to which he would not otherwise be entitled. Material or immaterial changes to this Agreement do not restart the running of the 21-day period. Having elected to execute this Agreement, to fulfill the promises set forth herein, and to receive thereby the benefits set forth above, EMPLOYEE freely and knowingly, and after due consideration, enters into this Settlement Agreement and Incorporated Full and Final Release intending to waive, settle and release all claims he has or might have against the COMPANY and BROWN.

18. EMPLOYEE has been advised by the COMPANY and BROWN that he has seven (7) calendar days from the date he signs this Agreement to rescind his acceptance of this Agreement in writing by delivering such written rescission to the Law Offices of Glen J. Torcivia & Associates, P.A., within the 7-day period.

19. EMPLOYEE further agrees not to disclose the terms of this agreement to anyone, except an authorized and licensed legal or tax adviser, and further agrees that he will not divulge,

directly or indirectly, any such terms to any other person, business, partnership, venture, corporation or entity. If he chooses to discuss this agreement with a licensed attorney or tax adviser, he will direct each and every one of them to hold the terms of this agreement in the strictest confidence and to make no disclosures to anyone regarding the agreement. EMPLOYEE specifically understands that the identity of the parties subject to this Agreement shall be held confidential by him and that he further agrees not to disclose to anyone, except a licensed legal or tax adviser, whether he received any sums for the claims made against COMPANY and BROWN.

In the event EMPLOYEE is, in the written opinion of EMPLOYEE's counsel, compelled to disclose the terms of this Agreement to any tribunal or else stand liable for contempt or suffer other censure or significant penalty, EMPLOYEE, after notice to COMPANY and BROWN may disclose to such tribunal only such terms of this Agreement that EMPLOYEE is compelled to disclose.  EMPLOYEE shall not be liable for the disclosure of such information to a tribunal compelling such disclosure unless such disclosure was caused or resulted from a previous disclosure by EMPLOYEE not permitted under this Agreement.

EMPLOYEE understands and agrees that failure to abide by the terms of this confidentiality provision shall constitute a material breach of the Agreement.  EMPLOYEE agrees and understands and that any failure to abide by the terms of this confidentiality provision may be enforced by any and all equitable or legal remedies available.

20. EMPLOYEE agrees that he will not in any way disparage or make negative comments regarding COMPANY or BROWN, including its current or former: employees, agents, attorneys, affiliates, directors, successors, assigns, or representatives in both the official and individual capacities, to any other person or persons.  EMPLOYEE understands and agrees

that failure to abide by the terms of this non-disparagement provision shall constitute a material breach of the Agreement.  EMPLOYEE agrees and understands and that any failure to abide by the terms of this non-disparagement provision may be enforced by any and all equitable or legal remedies available.

21. The COMPANY's Human Resources Department, upon request, shall provide dates of employment and position title to third parties inquiring about EMPLOYEE's employment and the parties agree that providing such information shall constitute a neutral reference.

22. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and will become effective and binding upon the parties as of the effective date at such time as all the signatories hereto have signed a counterpart of this Agreement, all of which taken together shall constitute one and the same agreement.  In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof. However, the Employee will undertake to deliver original documents as soon as possible.

IN WITNESS WHEREOF, the parties have set their hand and seal.

_____          _____
**CARLOS A. PONCE**                            **Date**

STATE OF FLORIDA
COUNTY OF PALM BEACH

SWORN TO and subscribed before me this _____ day of _____ 2012, by EMPLOYEE, who is personally known _____ or has produced identification _____.   Type of identification produced _____.

_____
NOTARY PUBLIC

Commission Expires:

_____   _____
**DAVID BROWN, CFO/TREASURER for**       **Date**
**BROWN DISTRIBUTING COMPANY**
**OF WEST PALM BEACH**

STATE OF FLORIDA
COUNTY OF PALM BEACH
          SWORN TO and subscribed before me this _____ day of _____ 2012, by _____, who is personally known _____ to me, or has produced identification \_\_\_\_\_.  Type of identification produced _____.

                                                                          _____
                                                                          NOTARY PUBLIC
                                                                          Commission Expires:

_____   _____
**DAVID BROWN, individually**                 **Date**

STATE OF FLORIDA
COUNTY OF PALM BEACH
          SWORN TO and subscribed before me this _____ day of _____ 2012, by DAVID BROWN, who is personally known _____ to me, or has produced identification \_\_\_\_\_.  Type of identification produced _____.

                                                                          _____
                                                                          NOTARY PUBLIC
                                                                          Commission Expires: